UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

MOSES A. KUHBANDER                                                      PLAINTIFF

v.                                CIVIL ACTION NO. 4:15CV-P123-JHM

JOE BLUE                                                                DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on initial review of Plaintiff Moses A. Kuhbander's *pro se* complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss the action.

**I. SUMMARY OF CLAIMS**

At the time Plaintiff filed the complaint, he was a convicted prisoner incarcerated at the Hopkins County Jail (HCJ),[1] where the alleged incidents in the complaint took place. He brings this action pursuant to 42 U.S.C. § 1983 against Joe Blue, the Hopkins County Jailer, in his official capacity.

In the complaint, Plaintiff divides his claims into seven sections. First, Plaintiff reports that upon entering HCJ, "the Staff confiscated religious material from me that is permitted for inmates to have according to the HCJ Rules and Regulations, policy and procedures; which is a violation of my rights to obtain religious materials used for mode of worship."

Second, Plaintiff reports that he was convicted of felony charges and "was suppose to be transferred to a state institution within 45 days of final sentencing because I do not qualify to serve time in county Jails; I have been detained in [HCJ] for an unreasonable length of time (7 months and counting) past my final sentence date."

---

[1] The Court has since been advised that Plaintiff has been transferred to the Roederer Correctional Complex (DN 8).

Third, Plaintiff claims that due to being held in the county jail "for an unreasonable length of time there has been medical fees and administration fees I have been charged for that should not be my obligation considering I was suppose to be transferred to the state institution long before I was charge those fees."

Fourth, Plaintiff asserts that "[i]nmates housed in segregation regardless of the reason have the right to one hour of recreation each day for cleaning, showering and exercize" but that HCJ "does not provide any possible way for inmates in segregation to exercize which is a violation of my rights." He also contends that "while in segregation the staff confiscates inmates mattress' forcing us to lay on the steel frame which is cruel and unusual punishment."

Fifth, Plaintiff alleges that HCJ "forces every inmate to use the same shaving razor." He further alleges that HCJ is supposed to be a tobacco-free facility but that he has "found staff smoking tobacco and using electronic smoking devices."

Sixth, Plaintiff complains that there "was property I was permitted to keep by certain staff members that was later confiscated by different staff members and disposed of such as 1 photograph, 1 Dictionary and 1 tongue ring." Additionally, complains Plaintiff, "[t]he staff also allowed inmates to steal property from me such as 1 pair of thermal pants, 3 pair of boxers, 3 pair of socks, 1 Deck of playing cards, 1 Drinking cup."

Finally, Plaintiff reports that he filed grievances on all of the foregoing issues "and because of that along with the fact of the crime Im convicted of, the Jail Staff has set out to maliciously attack me and treat me unfair and force cruel and unusual punishment on me."

As relief, Plaintiff seeks monetary and punitive damages.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

### III. ANALYSIS

Defendant Blue is sued in his official capacity. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendant Blue are actually against Hopkins County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

As to the second issue, "a municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was

incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

### A. Confiscation of Religious Material and Smoking by Staff

None of Plaintiff's allegations related to these claims demonstrate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by Hopkins County. In fact, Plaintiff alleges that the "religious material" should have been allowed pursuant to jail policy but that "the Staff" went against that policy and that HCJ is tobacco free but that staff violated that policy as well. Plaintiff also fails to allege sufficient facts to support any First Amendment or statutory claim that his religious practices were substantially burdened or totally prohibited. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). He alleges only that unspecified "religious material" for an unspecified religion was confiscated, and he does not allege that he had no other way to practice his religion or to obtain the materials. Accordingly, Plaintiff fails to establish a basis of liability against Hopkins County as to these two claims and, therefore, fails to state cognizable § 1983 claims.

### B. Delay in Transfer to State Facility

Plaintiff makes no allegation of any policy causing him to be delayed a transfer to a state institution. Additionally, it is well settled that inmates have no constitutional right to be incarcerated in any particular institution unless the state has created a liberty interest in remaining at a particular institution. *Montanye v. Haymes*, 427 U.S. 236 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Kentucky has not created a liberty interest to be incarcerated in a particular institution as the transfer of prisoners is within the discretion of the

corrections cabinet. *See* Ky. Rev. Stat. § 197.065. Accordingly, Plaintiff fails to state a claim upon which relief may be granted regarding his delay in transfer out of HCJ.

### C. Charged Medical and Administrative Fees

The Sixth Circuit has held that charging inmates per diem or co-pay fees does not violate the Fifth Amendment because the inmates receive services (housing, food, and medical care) in exchange for the fees. *See Bailey v. Carter*, 15 F. App'x 245 (6th Cir. 2001).

Additionally, a violation of the Eighth Amendment only occurs if the prison or jail conditions the right to receive necessary care or necessities on the payment of such fees. *See Reynolds v. Wagner*, 128 F.3d 166, 173-174 (3d Cir. 1997); *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay."). In this case, Plaintiff does not allege that he was denied medical care or necessities for failure to pay any fee; he merely alleges he was charged fees. He, therefore, fails to state an Eighth Amendment claim.

Finally, the Sixth Circuit has held that the Federal Constitution does not require the state to provide inmates with a predeprivation hearing prior to assessing fees against them. In *Sickles v. Campbell Cty.*, 501 F. 3d 726, 730 (6th Cir. 2007), the Sixth Circuit explained that a predeprivation hearing was not required because: 1) the private interests at stake are "small in absolute and relative terms;" 2) the risk of erroneous deprivation is small; 3) the benefits of a predeprivation hearing are small; and 4) the government's interests--sharing the costs of incarceration and furthering offender accountability--are substantial. As such, the Sixth Circuit held that "in view of the modest private interests at stake, the small risk of error, the limited benefits of additional safeguards and the unchallenged government interests in the policy, we see

no need to 'constitutionaliz[e] . . . [these] government procedures' and to impose the 'additional cost in terms of money and administrative burden' that such a predeprivation procedure would require." *Id.* at 731 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 347 (1976)). Plaintiff, therefore, additionally fails to state a claim under the Fourteenth Amendment.

### D. Conditions in Segregation

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Hudson v. McMillian*, 503 U.S. 1 (1992). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson v. Seiter*, 501 U.S. at 302-03. "'[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Street*, 102 F.3d at 815 (quoting *Farmer v Brennan*, 511 U.S. at 836). "Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering

actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998).

Additionally, the law has long been that "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 659 (6th Cir. 1994); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986). In addition to the legal requirement of an "injury" in case law historically, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the Prison Litigation Reform Act, lawsuits brought by institutionalized persons requires a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Moreover, in interpreting this statute in the context of prisoner complaints, courts have required that the injury be more than *de minimis*. *See*, *e.g.*, *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (sore bruised ear, lasting for three days, was *de minimis* and not the requisite "physical injury"); *Zehner v. Trigg*, 952 F. Supp. 1318, 1327 (S.D. Ind. 1997) (holding that no physical injury from asbestos in the air requires dismissal, without prejudice to plaintiff's right to later satisfy the physical injury requirement).

Plaintiff alleges that HCJ "does not provide any possible way for inmates in segregation to exercize" and that while inmates are in segregation, HCJ staff "confiscates inmates mattress' forcing us to lay on the steel frame which is cruel and unusual punishment." Plaintiff, however, fails to allege how long he was in segregation under these conditions, and a month after he filed

his complaint, the Court received notice that he had been transferred to a state facility. More fundamentally, however, Plaintiff fails to allege any injury, physical or otherwise, resulting from these conditions. Plaintiff, therefore, fails to state an Eighth Amendment claim.

### E. Forcing Inmates to Share Shaving Razor

As indicated above, under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. at 526-27). "Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence." *Wilson v. Yaklich*, 148 F.3d at 601.

Here, Plaintiff fails to allege that he suffered any physical injury as a result of sharing a razor. Further, because the record reflects that he was transferred to a state facility a month after filing the complaint, there is no threat of continued harm. Plaintiff therefore fails to state a constitutional claim in being forced to share a razor.

### F. Confiscation and Allowance of Stealing of Property

Plaintiff fails to allege a policy or custom that resulted in his property loss. He further fails to state a constitutional violation. The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *See Hudson v. Palmer*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). In order to assert a

constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt v. Taylor*, 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation of his personal property. For these reasons, Plaintiff's claim that staff confiscated and permitted inmates to steal his property fails to state a claim upon which relief may be granted.

### G. Retaliation

Retaliation for the exercise of a constitutional right is itself a violation of the Constitution actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* "Although the elements of a First Amendment retaliation claim [are] constant, the underlying concepts that they signify will vary with the setting—whether activity is protected or an action is adverse will depend on context." *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 388) (internal quotation marks omitted). The adverse action necessary to state a constitutional violation must be such that it would "'deter a person of ordinary

firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

While Plaintiff engaged in protected conduct by filing grievances, he fails to allege that an adverse action was taken that would "'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d at 625). In a broad and conclusory manner, Plaintiff states only that "Jail Staff has set out to maliciously attack me and treat me unfair and force cruel and unusual punishment upon me." He provides no details, such as who purportedly was involved or any specific actions that occurred. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) (stating that "some factual basis for the claims under § 1983 must be set forth in the pleadings" and "mere conclusory allegations of unconstitutional conduct" are insufficient).

The retaliation claim, therefore, will be dismissed for failure to state a claim upon which relief may be granted.

For all the foregoing reasons, the Court will dismiss this action by separate Order.

Date: February 2, 2016

                                                Joseph H. McKinley, Jr., Chief Judge
                                                   United States District Court

cc: Plaintiff, *pro se*
      Defendant
      Hopkins County Attorney
4414.005